IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Elizabeth Phillips, on behalf of Mark Phillips, deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security Administration,[1]<br><br>    Defendant. | C/A No.: 1:12-533-SVH<br><br><br><br>ORDER |

  This appeal from a denial of social security benefits is before the court for a final order pursuant to 28 U.S.C. § 636(c), Local Civil Rule 73.01(B) (D.S.C.), and the Honorable Terry L. Wooten's order dated May 31, 2012, referring this matter for disposition. [Entry #6]. The parties consented to the undersigned United States Magistrate Judge's disposition of this case, with any appeal directly to the Fourth Circuit Court of Appeals.

  Plaintiff files this appeal pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the claim for disability insurance benefits ("DIB"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

For the reasons that follow, the court reverses and remands the Commissioner's decision for further proceedings as set forth herein.

I.     Relevant Background

  A.     Procedural History

On October 27, 2005, Mark Phillips ("Claimant") filed an application for DIB in which he alleged his disability began on May 12, 2003. Tr. at 28, 591, 986. After holding a hearing, an administrative law judge ("ALJ") issued an unfavorable decision on April 26, 2007, finding Claimant was not disabled under the Act. Tr. at 28–35. The Appeals Council denied Claimant's request for further review, and Claimant filed an action in the United States District Court for the District of Arizona seeking judicial review of the decision. The parties stipulated to having that matter remanded pursuant to sentence four of 42 U.S.C. § 205(g), and on October 31, 2008, that court ordered the matter be remanded for further administrative proceedings. Tr. at 603–07.

On remand, a second ALJ, Richard Vogel, conducted a de novo hearing and issued an unfavorable decision on February 19, 2010, finding that Claimant was not disabled within the meaning of the Act. Tr. at 982–1011 (Hr'g Tr.), 591–602 (decision). Subsequently, the Appeals Council denied Claimant's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 583–84. Thereafter, Claimant brought an action in this court on April 15, 2010, seeking judicial review of the Commissioner's decision. *Phillips v. Comm'r of the Soc. Sec. Admin.*, No. 1:10-936 ("*Phillips I*"), at Entry #1. On July 18, 2011, the undersigned issued a Report and Recommendation ("Report") recommending remand with

instructions to the ALJ to consider Claimant's severe and non-severe impairments in combination; the side effects of Claimant's medications (specifically including the side effect of drowsiness) in assessing his credibility and RFC; Claimant's credibility and subjective complaints of pain; and all medical opinions in the record and the weight afforded to each. *Phillips I*, Entry #15. On August 18, 2011, the district judge adopted the Report in its entirety. *Phillips I*, Entry #21.

Claimant died on April 1, 2011, from injuries he sustained after falling on speakers in his living room. Tr. at 1138. His wife, Elizabeth Phillips ("Plaintiff"), properly filed a substitution form and indicated that she would like to appear in person at the hearing requested by Claimant. Tr. at 1139. Plaintiff appeared at a hearing before ALJ Vogel on January 6, 2012. Tr. at 1144–57. The ALJ again found that Claimant was not disabled within the meaning of the Act. Tr. at 1011D–Q. Because Plaintiff did not file any exceptions to the ALJ's decision, the decision became the final decision of the Commissioner for purposes of judicial review. Tr. at 1011B. On February 24, 2012, Plaintiff filed the present action seeking review of the Commissioner's decision. [Entry #1].

  B. Plaintiff's Background and Medical History

    1. Background

Claimant was 42 years old on the alleged onset date in 2003. Tr. at 56. He obtained a bachelor's degree in business administration. Tr. at 986. His past relevant work ("PRW") was as a computer technician and systems analyst. Tr. at 1154. Claimant's insured status expired December 31, 2006. Tr. at 593.

3

2.     Medical History and Prior Administrative Proceedings

The undersigned provided detailed summaries of Claimant's medical history and his prior hearing testimony in the Report entered in *Phillips I* at Entry #15. The undersigned incorporates those summaries by reference herein.

C.     The Administrative Proceedings

1.     The Administrative Hearing on Remand

a.     Plaintiff's Testimony

At the hearing on January 12, 2012, Plaintiff testified that Claimant stopped working sometime before 2003 and that he realized it was impossible for him to work after he fell asleep in a job interview. Tr. at 1148. She said Claimant was always in pain and that his medication resulted in excessive daytime drowsiness. Tr. at 1149. She testified that Claimant was prone to falling asleep at any moment and would sometimes fall asleep while standing up and would then fall down. Tr. at 1150–51. She stated that his injuries from falls were minor while they lived in Arizona, but the situation worsened when the family moved to Charleston, South Carolina, and Claimant's injuries became more severe. Tr. at 1151. Plaintiff testified that Claimant broke his sacrum after one fall and ultimately died after falling and crashing into a stereo speaker at home. Tr. at 1151–52. She said Claimant also had trouble sleeping at night due to sleep apnea and had been prescribed a CPAP machine, but found it difficult to use because he could not lie down in one position for more than a couple of hours. Tr. at 1150. Plaintiff stated that she primarily attributed Claimant's difficulties with daytime drowsiness to his medications. Tr. at 1152. She recalled that when Claimant's pump battery ran out and he was on a

4

very low dose of medication, he was clear-headed, but was incapacitated by pain. *Id.* Plaintiff also testified that Claimant had been treated for depression while living in Arizona and that he had seen a psychiatrist on a weekly basis for about one year. Tr. at 1154.

### b. Vocational Expert Testimony

Vocational Expert ("VE") Arthur Schmitt reviewed the record and testified at the hearing. Tr. at 1153. The VE categorized Plaintiff's PRW as a computer technician as semiskilled, sedentary work; and as a systems analyst as skilled, sedentary work. Tr. at 1154. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform sedentary work; no climbing, crawling, balancing, kneeling, exposure to industrial hazards, or overhead reaching; and no operation of foot pedals or motor vehicles. Tr. at 1155. The ALJ included additional limitations requiring a sit/stand option and a low-stress setting with no more than occasional decision-making or changes in setting. *Id*. The VE identified the following unskilled jobs consistent with the hypothetical: surveillance systems monitor, ticket seller, and telephone quotation clerk. Tr. at 1155–56. Upon questioning by Plaintiff's counsel, the VE testified that there would be no jobs available in the national economy if the hypothetical individual was unable to focus, concentrate, and complete tasks for up to two hours during the workday due to distractions from pain medication side effects or psychological symptoms. Tr. at 1156.

5

2. The ALJ's Findings on Remand

In his February 3, 2012, decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act through December 31, 2006.
2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 12, 2003 through his date last insured of December 31, 2006 (20 CFR 404.1571 *et seq.*).
3. Through his date last insured, the claimant had the following severe impairments: spinal arachnoiditis, failed back syndrome status post-surgery, osteoarthritis of the lumbar spine and knees, carpal tunnel syndrome, a hypersomnolent sleep disorder, obesity, and a major depressive disorder (20 CFR 404.1520(c)).
4. Through his date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to: sit for 6 hours of an 8-hour day; stand/walk for 2 hours of an 8-hour day; frequently lift/carry light items; occasionally lift 10 pounds; never climb, crawl, balance, kneel, or reach overhead; and never be exposed to hazards or operate motor vehicles. He would have required a sit/stand option at will. He would have been further limited to unskilled, low-stress work, defined as no more than occasional decision making or changes in the work setting.
6. Through his date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
7. The claimant was born on May 28, 1960 and was 46 years old, which is defined as a younger individual age 45–49, on the date last insured (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Through his date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that

>           existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
> 11.     The claimant was not under a disability, as defined in the Social Security Act, from May 12, 2003, the alleged onset date, through December 31, 2006, the date last insured (20 CFR 404.1520(g)).

Tr. at 1011F–Q.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the ALJ failed to properly consider the cumulative effects of Claimant's impairments;

2)    the ALJ conducted an improper listing analysis;

3)    the ALJ erred in evaluating Claimant's RFC; and

4)    the ALJ presented an incomplete hypothetical to the VE.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

   A.     Legal Framework

        1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

7

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

    2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See*

*id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

        1.    RFC Determination

Plaintiff contends that the ALJ erred in his RFC determination by failing to properly address the side effects of Claimant's medications as directed on remand and by placing excessive weight on Claimant's daily activities. [Entry #11 at 14–15]. The Commissioner responds by focusing on the ALJ's credibility determination, apparently in an attempt to discredit Claimant's complaints regarding the side effects of his medication.

[Entry #13 at 9–12]. The Commissioner's only direct response to Plaintiff's allegation of error is as follows:

> Claimant also complains that the ALJ did not consider the side effects of medications in assessing his residual functional capacity. However, the ALJ specifically considered Claimant's "complaints of pain and hypersomnolence in limited [sic] his balancing, climbing, exposure to hazards, and operating motor vehicles." This was sufficient consideration of Claimant's claims of drowsiness, whether the drowsiness was caused by sleep apnea or was a side effect of medication.

*Id.* at 12 (internal citations omitted).

On remand, the ALJ was directed to consider any side effects of Claimant's medications in combination with Claimant's other impairments. *Phillips I*, Entry #15 at 35. The ALJ was further advised that "the records suggest a potential tension between Plaintiff's need to take medication to alleviate his severe pain to be able to work and the drowsiness that medication causes that may hinder his ability to work. On remand, the ALJ should pay particular attention to that interplay in evaluating Plaintiff's subjective symptoms." [Entry #15 at 45–46]. The tension was underscored by Plaintiff's testimony on remand that when Claimant's pain medication was at its lowest, he was clear-headed, but incapacitated by pain. Tr. at 1152.

Rather than paying particular attention to the interplay between Claimant's severe pain and the side effects of his medication, the ALJ appeared to pay no attention at all. Despite very specific direction and emphasis on the importance of this issue, the ALJ found, without sufficient explanation, that "[t]he record simply does not corroborate the claimant's representations that his pain medications caused excessive daytime somnolence or difficulty concentrating." Tr. at 1011K. The ALJ's finding is in direct

11

contravention of the undersigned's finding in *Phillips I* that drowsiness was a "documented side effect." *Phillips I*, Entry #15 at 40. Furthermore, the records cited by the ALJ speak only to the qualified effectiveness of the pain pump, not as to whether Plaintiff's medications caused side effects. As part of his discussion of Plaintiff's sleep disorder, the ALJ also stated, "The medical evidence of record also does not corroborate the claimant's subjective complaints of excessive daytime sleepiness." Tr. at 1011L. This finding too ignores the undersigned's prior characterization of the medication side effects as "documented."

The ALJ treats Claimant's complaints of drowsiness as though they were made in isolation and not to any medical providers. As a result, the ALJ appears to have discounted the complaints based on his overall finding that Plaintiff was less than credible. However, this treatment ignores the many references to the side effects of Claimant's medications found in the medical records and referenced in the undersigned's prior Report, adopted by the court as its order on remand.

In assessing Claimant's RFC, the ALJ further stated, "Although the claimant complained of problems with hypersomnolence, there are no treatment notes documenting falls related to falling asleep while standing or performing other activities. . . . I have also considered his complaints of pain and hypersomnolence in limiting his balancing, climbing, exposure to hazards, and operating motor vehicles." Tr. at 1011O. The limitations set by the ALJ are common in disability cases and the ALJ's cursory reference to Claimant's hypersomnolence does not satisfy the court's mandate on remand.

12

Not only does the ALJ's decision fail to comport with the court's order in *Phillips I*, the hearing transcript on remand demonstrates that the ALJ made little effort to comply with the order. He specifically stated during the hearing that he did not remember the various bases for remand and, when Plaintiff's counsel directed him to a summary of the grounds for remand in her brief, he stated that he would "just leave it to [her] discretion as to what [she] want[ed] to focus [her] testimony on." Tr. at 1148.

For the foregoing reasons, the court finds that the ALJ did not adequately consider the side effects of Claimant's medications either independently or in combination with Claimant's other impairments in assessing his RFC. Therefore, the court remands the case to the ALJ for further consideration of these issues. On remand, the ALJ is directed to thoroughly explain his analysis regarding the documented side effects of Plaintiff's medications. The ALJ is further directed to explain how the medication side effects impacted Claimant's ADLs.

### 2. Combination of Impairments

Plaintiff argues that the ALJ failed to properly analyze the combined effect of Claimant's severe and non-severe impairments in assessing whether Claimant met a Listing. [Entry #11 at 10–13]. The Commissioner responds that, although the ALJ ultimately found that Claimant's combined impairments did not equal the requirements of any Listing, the ALJ's consideration of Claimant's combined impairments was extremely thorough and specifically discussed the combined limitations caused by Claimant's physical and mental impairments. [Entry #13 at 7–8].

At step three of the sequential evaluation, the Commissioner must determine whether the claimant has an impairment that meets or equals the requirements of one of the impairments listed in the regulations and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1508. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 404.1526(a). There are three ways to establish medical equivalence: (1) if the claimant has an impairment found in the Listings, but does not exhibit one or more of the findings specified in the particular Listing or one of the findings is not as severe as specified in the particular Listing, then equivalence will be found if the claimant has "other findings related to [that] impairment that are at least of equal medical significance to the required criteria"; (2) if the claimant has an impairment not described in the Listings, but the findings related to the impairment are at least of equal medical significance to those of a particular Listing; or (3) if the claimant has a combination of impairments and no singular impairment meets a particular Listing, but the findings related to the impairments are at least of equal medical significance to those of a Listing. 20 C.F.R. § 404.1526(b).

14

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also Saxon v. Astrue*, 662 F. Supp. 2d 471, 479 (D.S.C. 2009) (collecting cases in which courts in this District have reiterated importance of the ALJ's explaining how he evaluated the combined effects of a claimant's impairments). The Commissioner is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

Plaintiff argues that the ALJ erred by failing to properly consider whether the combined effects of Claimant's impairments equaled a Listing. [Entry #11 at 10–13]. At step three, the ALJ made the following findings:

> Moreover, I have considered the combined effects of the claimant's impairments and has [sic] determined that the findings related to them are not at least equal in severity to those described in Listings 1.01, 10.04, 11.01, 3.10, and 12.04. See also Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). Specifically, the undersigned notes that the claimant's combination of impairments, especially his back problems, hypersomnolence, arthritis and depression, has not resulted in the equivalent of any of the applicable Listings. During the relevant period, the claimant was able to ambulate effectively and perform fine and gross manipulation to independently carry out activities of daily living. While the combination of the claimant's impairments did impose some limitations, I can find no limitations in the claimant's ability to understand, remember, and carry out simple

15

> instructions; make judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting.

Tr. at 1011I–J. The ALJ went on to describe Claimant's ADLs and treatment records. Tr. at 1011J. The court finds that the ALJ's discussion of Plaintiff's combined impairments is sufficient under *Walker*. Furthermore, Plaintiff has offered no explanation of how more discussion of Claimant's combined impairments may have changed the outcome of the ALJ's Listing analysis. For these reasons, the court finds the ALJ's Listing analysis sufficiently addressed Claimant's combined impairments. *See Brown v. Astrue*, C/A No. 0:10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012) (finding that Fourth Circuit precedent issued after *Walker* suggested that *Walker* was not meant to be used as a trap for the Commissioner).

### 3. Analysis of Listing 1.04(C)

Plaintiff also argues the ALJ's Listing analysis was improper because he failed to compare the criteria for Listing 1.04(C) with Claimant's symptoms. [Entry #11 at 13–14]. Plaintiff specifically argues that the ALJ failed to properly analyze whether Claimant was able to ambulate effectively. *Id.* at 14. In response, the Commissioner contends that Plaintiff's only evidence of limited ambulation is Claimant's subjective complaints, which the ALJ properly discredited. [Entry #13 at 8–9].

Listing 1.04 provides, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04.

After identifying the proper Listing criteria, the ALJ should "compare[ ] each of the listed criteria to the evidence of [plaintiff's] symptoms." *Cook*, 783 F.2d at 1173. *Cook v. Heckler*, however, "does not establish an inflexible rule requiring an exhaustive point-by-point discussion in all cases." *Russell v. Chater*, 60 F.3d 824, 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (Table). Rather, courts in the Fourth Circuit have found that a "point-by-point" analysis is required when, "there is 'ample factual support in the record' for a particular listing." *Beckman v. Apfel*, C/A No. 99–3696, 2000 WL 1916316, at *9 (D. Md. Dec.15, 2000).

In the present case, the ALJ concluded that Claimant did not meeting Listing 1.04(C) because his condition did not result in an inability[4] to ambulate effectively. Tr. at 1011G. Plaintiff argues that the ALJ failed to compare the Listing criteria to the evidence of Claimant's symptoms. [Entry #11 at 14]. She further argues Claimant's subjective complaints and reported ADLs demonstrate that he was unable to ambulate effectively. *Id.* The Commissioner argues without authority that Plaintiff's argument fails because Claimant's subjective complaints are insufficient to establish that he was unable to ambulate effectively. [Entry #13 at 9]. Because the court is remanding this matter for the

---

[4] Although the ALJ's decision states that Claimant's condition "did not result in an ability to ambulate effectively," this appears to have been a scrivener's error and the ALJ's intended meaning is apparent from the statement's context.

ALJ to address the side effects of Claimant's medications, the undersigned further directs the ALJ to explicitly assess Claimant's ability to ambulate in light of his subjective complaints.

        4.        Incomplete Hypothetical

Finally, Plaintiff argues that the ALJ failed to meet his burden at step five of the sequential evaluation process because he presented an incomplete hypothetical to the VE. [Entry #11 at 16–17]. Plaintiff contends that the ALJ improperly omitted the medication side effects of daytime drowsiness, confusion, and inability to focus from the hypothetical. *Id.* at 17. In light of the foregoing reasons for remanding this case, the ALJ is directed on remand to present a hypothetical to the VE that corresponds to a properly-assessed RFC.

        5.        Reversal v. Remand

The court is concerned that, nearly eight years after his initial application, Claimant's disability petition remains unresolved due to the Commissioner's errors. Nonetheless, despite the repeated errors and resulting delay, the undersigned concludes that the circumstances of this case do not justify outright reversal. *See, e.g., INS v. Ventura*, 537 U.S. 12, 16 (2002) (stating that, when a court sitting in an appellate capacity reverses an administrative agency decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotations omitted); *Hall v. Harris*, 658 F.2d 260, 266 (4th Cir. 1981) (holding that remand for further proceedings is generally the proper remedy when an administrative law judge errs in evaluating a social security claimant's residual functional

18

capacity). This is, most critically, because it is not certain that Plaintiff is entitled to an award of benefits. *Cf. Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987) ("We are convinced . . . that if the matter were to be remanded to the Secretary for redetermination and the Secretary were to conclude again that [the plaintiff] was not disabled, his decision would not withstand judicial review."); *Miller v. Callahan*, 964 F. Supp. 939, 956 (D.Md. 1997) ("Where the record does not show substantial evidence supporting the denial of benefits under the correct legal standard, *and reopening the record would serve no useful purpose*, reversal rather than remand is appropriate") (emphasis added). Accordingly, the undersigned concludes that remand, rather than reversal with a directive to award benefits, is the proper course.

Though the court has decided to remand Plaintiff's case to the Commissioner, the court expresses its serious concerns regarding the delay in final resolution of this matter. The court strongly encourages the Commissioner to take whatever action is necessary to expedite review of this matter and to avoid further procedural errors on remand.

III.   Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned reverses and remands this matter to the Commissioner, pursuant to sentence four of 42 U.S.C. §§ 405(g), to hold an expedited de novo hearing and issue a prompt decision regarding Plaintiff's eligibility for DIB.

IT IS SO ORDERED.

August 14, 2013  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge